IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| GERRY LAWSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:12-CV-023 |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION
TO AFFIRM DECISION OF THE COMMISSIONER**

Plaintiff GERRY LAWSON brings this cause of action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of defendant CAROLYN W. COLVIN, Commissioner of Social Security (Commissioner), denying plaintiff's application for supplemental security income benefits. For the reasons set out herein, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not disabled and not entitled to benefits be AFFIRMED.

I.
BACKGROUND

Plaintiff applied for supplemental security income benefits on October 28, 2008. (Transcript [hereinafter Tr.] 116). Plaintiff alleges he has been unable to work since January 1, 2007, due to severe breathing problems caused by his asthma and chronic obstructive pulmonary disorder (COPD). (*Id.* 163). The Social Security Administration, finding plaintiff suffers from non-disabling asthma, pain disorder, and organic mental disorder, denied benefits initially and upon reconsideration. (*Id.* 60, 61).

Upon plaintiff's request, a hearing was held before an Administrative Law Judge (ALJ) on July 27, 2010. (*Id.* 23). The ALJ determined plaintiff had not engaged in substantial gainful activity since the alleged onset date. (*Id.* 11). At the time of the administrative hearing, plaintiff was forty-nine years old and had completed his education through the seventh grade. (*Id.* 16-17). Plaintiff's past relevant work was as a salvage laborer. (*Id.* 17).

On October 12, 2010, the ALJ rendered an unfavorable decision, finding plaintiff was not disabled and not entitled to benefits at any time relevant to the decision. (*Id.* 18). The ALJ found plaintiff suffers from the "severe" impairments of "asthma, chronic obstructive pulmonary disorder ("COPD"); plantar calcaneal spur; history of fracture of the right great toe with flexion contracture; pain disorder; and borderline intellectual functioning." (*Id.* 11). The ALJ found that while these impairments were "severe" within the meaning of the regulations, they were not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, of 10 C.F.R. Part 404. (*Id.*).

After reviewing the medical record and discrediting plaintiff's claims in large part, the ALJ concluded plaintiff retained the residual functional capacity to perform a full range of light work with the additional limitations that he could not work around dust, fumes, odors, and gases; requires an indoor, temperature-controlled work environment; and can perform simple, repetitive job tasks. (*Id.* 13, 14). Based on the RFC determination and the testimony of the vocational expert, the ALJ found that while plaintiff could not return to his past relevant work, there were jobs which plaintiff remains able to perform, specifically, small products assembler, shipping and receiving weigher, and folding machine feeder. (*Id.* 18). The ALJ's determination was upheld on appeal. (*Id.* 1). The instant federal claim, based on 42 U.S.C. § 405(g), followed.

## II.
## ISSUES PRESENTED

Plaintiff contends the Commissioner erred in his determination plaintiff can perform light-level jobs. Plaintiff's argument is two-fold: (I) he was disabled under the Listings or, alternatively, (ii) he was so limited in his ability to work that the ALJ should have considered plaintiff disabled.

## III.
## STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this Court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). To determine whether substantial evidence of disability exists, four elements of proof must be weighed: "(1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history." *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972)). If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)

# IV.
# MERITS

## A. *The Listing Requirements*

Plaintiff first contends he met the requirements of Listing 3.02, and the ALJ should have found him disabled per se. Plaintiff's argument is based upon the results of a 2008 pulmonary function test reflecting the impact of his asthma and COPD on his lungs. (Tr. 257). Listing 3.02, at the time of plaintiff's stated onset date, defined the parameters of disability determination of a person with COPD who underwent a Spirometry, a common type of a pulmonary function test. A Spirometry measures the volume and speed of a person's ability to inhale and exhale. One of the results of the testing is one-second forced expiratory volume, or FEV1, which is the volume of air that a person can blow out in one second after taking a deep breath. Listing 3.02 mandates what FEV1 results will render a person with COPD automatically disabled. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.02 (2007).

Plaintiff underwent a Spirometry. (Tr. 257). At the time of the test, plaintiff was 176.50 cm tall. His FEV1 value without any medication was 1.40. (*Id.*). He was then given two puffs of Albuterol, which is a bronchodilator, or a medicine that widens the bronchial tube. Plaintiff's FEV1 value with medication was 1.62. (*Id.*). Under Listing 3.02, a person of plaintiff's height with a FEV1 value of 1.55 or less is disabled. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.02. Thus, without medication, plaintiff qualified as disabled because he fell below the threshold FEV1 value, but with medication plaintiff did not qualify as disabled.

The question, therefore, is which measurement should be used in the determining whether plaintiff is disabled under Listing 3.02. The regulations answer this question:

> Spirometry should be repeated after administration of an aerosolized bronchodilator under supervision of the testing personnel if the pre-bronchodilator FEV1 value is less than 70 percent of the predicted normal value . . . The effect of the administered bronchodilator in relieving bronchospasm and improving ventilatory function is assessed by spirometry. If a bronchodilator is not administered, the reason should be clearly stated in the report. *Pulmonary function studies performed to assess airflow obstruction without testing after bronchodilators cannot be used to assess levels of impairment* in the range that prevents any gainful work activity, unless the use of bronchodilators is contraindicated.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.00(E) (emphasis added). Because the Spirometry was performed post-bronchodilator administration, the result of *that* test is what must be used for disability determination purposes. *See id.* In this case, after receiving medication, plaintiff's FEV1 value of 1.62 was above the 1.55 value necessary to meet the Listing requirements.[1] Consequently, plaintiff did not qualify as disabled under Listing 3.02. Plaintiff's contention otherwise is without merit.

### B. Plaintiff's Ability to Perform Light-Level Work

Plaintiff next contends that even if he did not meet the Listing requirements, the results of the Spirometry nevertheless demonstrated that his breathing problems are severe enough so as to preclude the ALJ's determination that he is capable of performing light-level work. The Commissioner has responded that the evidence shows plaintiff's illness is well-controlled on medication and plaintiff does not require any restrictions greater than those found by the ALJ.

---

[1] In their briefs before the Court, both parties use 1.45 as the benchmark applicable to plaintiff. Plaintiff's height information set forth in the Spriometry report indicates plaintiff's height is "176.50 cm  69.49 in." (Tr. 257). Listing 3.02 sets forth FEV1 values according to both a person's height in centimeters and in inches. Under that Listing, a person with a height of 176-180 centimeters must have a FEV1 value of 1.55 or less to be considered disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.02. Using plaintiff's centimeter measurement, plaintiff falls under this category. Also pursuant to the Listing, however, a person with height of 68-69 inches must have a FEV1 value of 1.45 or less. *Id.* Using plaintiff's inches measurement, as both parties have done in their briefs to the Court, plaintiff falls under this category (there is no accommodation in the Listing for a person with a height of more than 69 inches but less than 70 inches). The Court has used the Listing based upon plaintiff's height in centimeters because it is the more precise measurement and because the Listing using the inches measurement does not specifically account for a person of plaintiff's height, i.e., more than 69 but less than 70 inches tall.

The Commissioner found plaintiff suffers from asthma and COPD, *inter alia*.[2] Starting with the last of the four *Wren* factors, plaintiff's age, education, and work history do not, themselves, support a claim of disability. *See Wren,* 925 F.2d at 126, 128. At the time of the hearing before the ALJ plaintiff was forty-nine and had completed his education through the sixth grade, dropping out to work before completing the seventh grade. (Tr. 394). Plaintiff's past relevant work history is as a salvage laborer, although plaintiff indicates his work was sporadic and he was only paid in cash. (*Id.* 17, 28). None of these factors, taken either separately or in combination with the other factors, indicate plaintiff should be classified as disabled given his ailments. In-depth evaluation of the three remaining *Wren* factors yields the same result. *See Wren,* 925 F.2d at 126, 128.

1. Objective Medical Evidence

It is undisputed that plaintiff suffers from asthma and COPD. He was routinely seen for medical examination. Over his course of treatment, plaintiff's doctors frequently reported wheezing, rales, and rhonchi in plaintiff's lungs. (Tr. 193, 209, 222, 224, 232, 243, 248, 345, 354, 359, 379). In fact, there appear to be only three instances recorded over the five-year time period under consideration where plaintiff's lungs were clear, with no wheezing, rales, or rhonchi heard—once in 2006 when he was seen in the emergency room for abdominal pain; once in 2008 during a medical examination at which plaintiff complained of cough, shortness of breath, and wheezing; and once in 2009 when he was being evaluated for his disability claim. (*Id.* 210, 240, 268).

---

[2] The ALJ also found plaintiff suffers from the severe impairments of a plantar calcaneal spur, a history of a fracture of the right great toe with flexion contracture, pain disorder, and borderline intellectual functioning. (Tr. 18). Plaintiff's focus in this case, however, is the impact of the asthma and COPD on his ability to work and the alleged error of the ALJ's determination considering those ailments.

Plaintiff's oxygen saturation levels over the years included in the medical record have generally increased. In 2006 and 2007, his oxygen levels were recorded at 88, 90, 92, and 95 percent. (*Id.* 192, 222, 224, 226, 232). In early January, 2008, plaintiff's oxygen level was recorded at 86 percent, and during the middle of apparent asthma attack later that year it was recorded at 88 percent. (*Id.* 236, 244). Apart from those two low recordings, plaintiff's oxygen levels ranged between 90 and 99 percent in 2008. (*Id.* 209, 238, 242, 246, 257, 332, 337). In 2009 and 2010, plaintiff's oxygen levels ranged from 95 to 98 percent. (*Id.* 340, 343, 347, 351, 357, 360, 364, 377, 380).

Also included in the objective medical evidence are the results of the 2008 pulmonary examination, or Spirometry, discussed above. (*Id.* 257-262). The results of that study, as recorded on a "Pulmonary Function Report Form," was reduced to two measurements, the forced vital capacity (FVC) value, which measures the difference between a person's full and almost-empty lung capacity, and the FEV1, which (as indicated above) is the volume of air a person can blow out in one second after taking a deep breath. The normal FVC value is 4.14 liters. (Tr. 262). Without medication (specifically, two puffs of albuterol), plaintiff's FVC value was 2.27 liters, and with medication it was 2.31 liters. (*Id.*). The normal FEV1 value is 3.08 liters. (*Id.*). Without medication, plaintiff's FEV1 value was 1.40 liters, and with medication it was 1.62 liters. (*Id.*).

2. Diagnoses and Opinions of Treating and Examining Doctors

Doctors have frequently diagnosed plaintiff with some form of respiratory-system-related illness, apart from his asthma, which itself is described as "chronic" and "moderate." (*Id.* 197 (asthamatic bronchitis), 224 (referencing plaintiff's chest infections), 359 (recurrent hacking cough), 192, 240). In early 2008, he was diagnosed with COPD. (*Id.* 236). Even though plaintiff was

"known to have asthma since childhood" (*Id.* 201), there were occasions when plaintiff's asthma would suddenly worsen (*Id.* 225, 244). On one such occasion, plaintiff was so short of breath he was unable to speak. (*Id.* 244). Even after the doctor administered a breathing treatment to plaintiff, the doctor still had to send plaintiff to the hospital in an ambulance. (*Id.* 245). At that point in time, plaintiff was on five different medications for his respiratory ailments. (*Id.* 244). One of plaintiff's doctors reported plaintiff had a history of going through his asthma inhalers too quickly. (*Id.* 246).

Despite these recurrent ailments, even with medication, none of plaintiff's doctors put any restrictions on plaintiff's working. One of plaintiff's doctors advised plaintiff to "avoid irritants as best as possible," but there are no other limitations placed upon defendant by his doctors.[3] (*Id.* 225). The only doctor to assess plaintiff's ability to work was Doctor Patty Rowley, a state agency medical consultant, who completed a Physical Residual Functional Capacity Assessment of plaintiff. (*Id.* 300-307). According to Dr. Rowley's assessment, plaintiff is capable of occasionally lifting twenty pounds and frequently lifting ten pounds. (*Id.* 301). He can stand, walk, and/or sit for about six hours in an eight-hour workday. (*Id.*). The only limitation Dr. Rowley placed on plaintiff was that he had to "avoid concentrated exposure [to] fumes, odors, dusts, gases, poor ventilation, etc." (*Id.* 304). Dr. Rowley indicated in her assessment that she had considered several of plaintiff's doctors' reports in making her conclusions along with the results of the 2008 Spirometry. (*Id.* 307).

---

[3] At the same time, it is unclear whether plaintiff's doctors knew plaintiff was working in a salvage yard, as none of their reports reference such employment. At the hearing, plaintiff indicated he worked in a wrecking yard up until "a couple of years" before the July 2010 ALJ hearing. (*Id.* 29). Based on that testimony, then, plaintiff was working until approximately mid-2008, which, the Court notes, is around the same time plaintiff had the severe asthma attack where he was "dyspheic and barely able to speak" and for which his doctor sent him to the emergency room. (*Id.* 244). In any event, it seems unlikely a doctor would place a work limitation on a patient if the doctor thought the patient was unemployed.

3. Plaintiff's Subjective Evidence of Pain and Disability

The medical record is replete with instances of plaintiff complaining to his doctors of shortness of breath or trouble breathing, wheezing, and coughing. (*Id.* 192, 226, 236, 239, 247, 337, 351, 353). According to plaintiff, however, the medication he was prescribed for his respiratory illnesses "[h]elp, they manage[] it."[4] (*Id.* 393). The Court does not ignore the ALJ's reference to the fact that plaintiff is a smoker but it does not afford such an observation great evidentiary value.

At the ALJ hearing, plaintiff testified that on a "good day" he required his inhaler only once or twice. (*Id.* 30). When the weather is rainy or cold or when there are a lot of allergens in the air, plaintiff said he would have to "get on my breathing machine." (*Id.* 30). On "bad days," both plaintiff's breathing machine and his asthma inhalers are ineffective. (*Id.* 32). On such days, plaintiff must go to the hospital to receive breathing and intravenous treatments. (*Id.*). On bad days, plaintiff testified, his hands and legs go numb from the oxygen depravation, and he experiences muscle spasms. (*Id.* 33). As to the frequency of such days, plaintiff indicated they occurred "quite a bit," with greater frequency in the winter months. (*Id.* 33).

As to his activities of daily living, plaintiff testified he lives either with his daughter's mother or with his daughter. (*Id.* 29). He described his role as a care giver for his four grandchildren, ages four to ten. (*Id.* 41). In that role, plaintiff makes sure the children are fed, but he does not do any exertional activities, such as mopping or sweeping. (*Id.* 44). Plaintiff testified his days tending to his grandchildren consist of "just sitting and watching them." (*Id.*). In his daily activity reports, plaintiff indicated he cooks daily and cleans up around the house "sometimes." (*Id.* 158). He goes

---

[4] The effectiveness of the medication is also, to some degree, reflected by the fact plaintiff consistently requested refills of the medication and never complained of their ineffectiveness. (*Id.* 204, 226, 236, 243, 246, 247, 337, 259, 364, 377). On at least two recorded occasions, however, plaintiff refused a breathing or nebulizer treatment. (*Id.* 231, 359). The record does not indicate the grounds upon which plaintiff's refusal was based.

grocery shopping once a month. (*Id.* 159). In discussing his abilities, plaintiff indicated his difficulty breathing impacts his lifting, bending, standing, reaching, walking, kneeling, talking, stair climbing, and concentration abilities, along with his ability to use his hands and complete tasks. (*Id.* 161). He can walk three or four blocks before requiring a ten- to fifteen-minute break. (*Id.* 161).

### *C. Substantial Evidence Supports the ALJ's RFC Determination*

The ALJ determined plaintiff's residual functional capacity (RFC) as follows:

> [the claimant is able] to perform light work as defined in 20 C.F.R. 416.967(b) with the following limitations. He can lift and carry 20 pounds occasionally and 10 pounds frequently. He can stand and walk 6 hours in an 8-hour workday. He can sit 6 hours in an 8-hour workday. He must avoid working around even moderate exposure to dust, fumes, odors, and gases. He requires an indoor, temperature-controlled work environment. He can perform simple, repetitive job tasks.

(Tr. 13). In explaining this RFC, the ALJ stated that while "claimant has some level of pain and functional loss," his "allegations of the severity, frequency, and intensity of his symptoms are not fully credible." (*Id.* 14). The ALJ also noted, "there is no credible evidence COPD and asthma have compromised the claimant's ability to perform the exertional requirements of a restricted range of light work." (*Id.* 16). The ALJ continued, "I have provided environmental limitations, which are specific to his symptoms, particularly his difficulty breathing. The medical evidence, when considered in the light most favorable to the claimant, does not warrant further limitations." (*Id.*).

Light work is defined by the Social Security Administration as follows:

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling or arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.2567(b); 29 C.F.R. § 416.967(b).

Plaintiff argues "the severity of Mr. Lawson's breathing problems is not consistent with the ALJ's finding that he can perform 'light' exertional work on a sustained basis." (Plaintiff's Brief in Support of Claim for Social Security Benefits, doc. 14, pg. 10 (filed Aug. 23, 2012)). Plaintiff presents a persuasive argument. The restrictions plaintiff described, particularly on "bad days," of having to go to the hospital for breathing treatments, more so in the winter months, would appear to restrict, if not eliminate, the ability to perform sustained work even at the light level, although plaintiff's description of his restrictions are rebutted to some degree, by plaintiff's statement of an ability to walk three or four blocks and his testimony at the ALJ hearing (which occurred in July 2010) that he had only sought breathing treatments twice from January to July of 2010. (Tr. 34). In addition, plaintiff has not identified any entries in the medical record reflecting plaintiff frequently sought breathing treatments at any medical facility.

This Court, however, does not consider this issue based only on plaintiff's testimony. Instead, the Court looks to whether there is "substantial evidence" supporting the ALJ determination. In doing so, and in weighing the *Wren* factors, the Court concludes there is substantial evidence to support the ALJ's RFC determination.

The objective medical evidence indicates plaintiff does suffer from a medically determinable problem due to asthma and COPD. The question is whether plaintiff is capable of performing light-level work, with the other restrictions listed by the ALJ, despite the severe nature of his breathing problems as documented in the 2008 Spriometry. That question was answered from a medical standpoint by Dr. Rowley, who concluded plaintiff was capable of performing activities consistent with light-level work. (Tr. 300-307). Dr. Rowley made this determination with specific reference to the Spirometry test results upon which plaintiff bases his contention. (*Id.* 307). The limitation that plaintiff "must avoid working around even moderate exposure to dust, fumes, odors, and gases"

appears to be the result of Dr. Rowly's recommendation that plaintiff avoid concentrated exposure to such things. In fact, the ALJ took the limitation a step further by imposing a limitation of moderate exposure to respiratory irritants.

Plaintiff has identified to no medical determination or opinion conflicting with Dr. Rowley's interpretation of the Spriometry test results. In his brief, plaintiff points to *The Cecil Textbook of Medicine* for support of his contention. Even if the portions of the textbook quoted by plaintiff support his position, however, such evidence has little value when compared to the interpretation by a medical doctor evaluating the specific test results.

The real conflict in the record is between plaintiff's statements that he is too limited by his respiratory ailments to work and the doctor's determination otherwise. It is the ALJ's job to resolve this conflict. *See Laffoon*, 558 F.2d at 254. The ALJ determined plaintiff's complaints were "not fully credible" and instead choose to rely on Dr. Rowly's physical RFC assessment, based upon not only her interpretation of a medical test but also upon plaintiff's treatment record. Because every portion of the RFC determination plaintiff challenges has evidentiary support in the form of objective medical tests and diagnoses and opinions of treating and examining physicians, the ALJ's enunciated reasons for denying plaintiff benefits, despite his respiratory problems, have sufficient support in the record. *See Wren*, 925 F.2d at 126; *Anderson*, 887 F.2d at 633. They are, consequently, conclusive, and this Court may not substitute its own judgment for that of the Commissioner, even if it would have concluded the evidence preponderates toward a different finding. *See Strickland*, 615 F.2d at 1106.

## V.
## RECOMMENDATION

For the reasons set forth above, it is the opinion and recommendation of the undersigned to

the United States District Judge that the decision of the Commissioner finding plaintiff GERRY LAWSON not disabled and not entitled to disability benefits be AFFIRMED.

## VI.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 1st day of March, 2013.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

### * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).